ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JAN 25 PM 3:39

CLERK C. Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| OLIVER C. LOADHOLT, | * | |
| Plaintiff, | * | |
| v. | * | CV 309-091 |
| DR. MOORE, et al., | * | |
| Defendants. | * | |

**ORDER**

Plaintiff Oliver C. Loadholt, an inmate at Macon State Prison in Oglethorpe, Georgia,[1] filed this action pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis*. Plaintiff sued the Georgia Department of Corrections and a number of physicians working at various correctional facilities in Georgia, alleging that these Defendants mistreated him and deprived him of his Eighth Amendment right to basic medical care. All claims, with the exception of those waged against Dr. Chaudhary of Augusta State Medical Prison and Dr. Moore of Telfair State Prison, have been dismissed. (See doc. nos. 16, 45.) On October 6, 2010, Dr. Chaudhary moved to dismiss pursuant to 12(b)(6). (Doc. no. 42.)

---

[1] When Plaintiff commenced this action, he was incarcerated at Telfair State Prison in Helena, Georgia.

On March 14, 2011, the United States Magistrate Judge entered a Report and Recommendation that the Court should grant in part and deny in part Dr. Chaudhary's motion. (Doc. no. 53.) After a thorough review of the applicable facts and the law, the Magistrate Judge determined that Plaintiff had arguably stated an Eighth Amendment claim against Dr. Chaudhary. Dr. Chaudhary filed an objection (doc. no. 56), which is presently before the Court. With due regard to the Magistrate Judge's recommendation, Dr. Chaudhary's objection is **SUSTAINED** and his motion to dismiss is **GRANTED IN FULL**. As a result, the only remaining Defendant in the case is Dr. Moore.

## I. BACKGROUND

The facts as alleged in Plaintiff's Complaint[2] are as follows.[3] Plaintiff has chronic hepatitis B, a viral infection that causes inflammation of the liver. (Compl. ¶ 6.) Since his incarceration beginning in 2000, Georgia Department of Corrections health care providers have monitored Plaintiff's condition to ensure that treatment would be available should the

---

[2] Plaintiff completed a standard prisoner form to file this action (doc. no. 1), but supplemented the form with a handwritten document which contains a more extensive catalogue of factual allegations (doc. no. 1-1). The Court will refer to this supplemental document as the "Complaint" hereinafter.

[3] When ruling on a motion to dismiss, the Court must accept all facts alleged in the Complaint as true and must construe all reasonable inferences in the light most favorable to Plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

need arise. (Id.) In March 2008, Dr. Cheney of Telfair State Prison ("TSP") informed Plaintiff, presumably after blood analysis, that his viral count warranted treatment. (Id. ¶ 1.) Dr. Cheney recommended treatment with interferon, a protein administered to suppress the virus and forestall cirrhosis, or liver scarring.[4] (Id.) To receive treatment, however, Dr. Cheney indicated that Plaintiff was required to have "a relatively healthy liver free of cirrh[o]sis." (Id. ¶ 2.)

Several months after Dr. Cheney's treatment recommendation, Plaintiff was transferred to Augusta Medical State Prison ("AMSP") for a consultation regarding treatment. (Id. ¶ 8.) He was not treated in the interim. After his arrival at AMSP, Plaintiff was informed by medical staff that treatment would not proceed until he underwent a liver biopsy to evaluate the health of his liver. (Id. ¶ 9.)

In December 2008, Plaintiff once again consulted with doctors at AMSP regarding treatment (id. ¶ 10), and in August 2009 he was transferred to AMSP to receive the liver biopsy (id. 12). Plaintiff remained at AMSP for two weeks following the operation and on return to TSP was examined by Dr. Moore, another physician at TSP. (Id. ¶ 18.) Plaintiff indicated that his liver was causing "constant pain," and Dr. Moore advised Plaintiff that his liver was swollen. (Id. ¶ 19.) However, in September 2009, Dr. Chaudhary at AMSP informed Plaintiff that

---

[4] See http://www.medicinenet.com/interferon/article.htm.

his liver was in fact healthy and that, as a consequence, treatment was not necessary. (Id. ¶ 4.) Days later, Dr. Moore informed Plaintiff that, notwithstanding any complaints of pain, he would not be treated because his liver was healthy and his condition did not require it. (Id. ¶ 20.)

Plaintiff filed this action in November 2009, alleging that Dr. Chaudhary, Dr. Moore, and others were deliberately indifferent to his serious medical needs by failing to treat his hepatitis. Plaintiff has also alleged several state law claims. Plaintiff is seeking damages and an injunction ordering Defendants to provide treatment as prescribed by Dr. Cheney. In previous orders, all claims except those against Dr. Chaudhary and Dr. Moore were dismissed. (See doc. nos. 16, 45.) Dr. Chaudhary moved to dismiss, and the Magistrate Judge recommended that Dr. Chaudhary's motion be denied as to Plaintiff's claim of deliberate indifference to medical needs. Objections to the Magistrate Judge's Report and Recommendation have been filed, and Dr. Chaudhary's motion is now ripe for consideration.

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Scheur v. Rhodes, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and construe all reasonable

4

inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 1940 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Twombly, 550 U.S. at 556-57 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

### III. DISCUSSION

Plaintiff alleges that Dr. Chaudhary, by denying hepatitis treatment, was deliberately indifferent to his serious medical needs. In his Report & Recommendation to this Court, the Magistrate Judge found that Plaintiff had arguably stated a claim for relief. Dr. Chaudhary objects to this finding, contending that Plaintiff's allegations evince merely a difference in professional judgment regarding treatment, not

deliberate indifference to Plaintiff's medical needs. This Court agrees with Dr. Chaudhary's assessment.

A. Legal Standard

In the seminal case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court recognized the government's affirmative obligation to provide medical care for inmates. In their confinement, inmates have no choice but to rely on prison authorities for the treatment of their medical needs. And, according to the Supreme Court, our society's "evolving standards of decency" will not countenance the unnecessary and wanton denial of medical care to inmates completely dependent upon the government for sustenance. Id. at 106. After all, the "denial of medical care [to inmates] may result in pain and suffering which no one suggests would serve any penological purpose." Id. at 103. The government, therefore, may not deliberately ignore or withhold minimally adequate medical care to those inmates stricken with serious medical needs. Id. at 103-04 ("[I]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.") (quoting Spicer v. Williamson, 132 S.E. 291, 293 (N.C. 1926)).

In articulating this constitutional right to basic medical care, however, the Court in Estelle was careful to emphasize that not "every claim by a prisoner that he has not received

6

adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. Incompetent care, "although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." Id. In short, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106.

The conceptual distinction drawn in Estelle between constitutional misconduct and negligent medical treatment is an important one, and clearly borne out by the comparatively onerous burden placed on inmates seeking to establish an Eighth Amendment deprivation. An inmate can only prove a constitutional violation by setting forth evidence of: (1) an objectively serious medical need, and (2) deliberate indifference to that need. See Bingham v. Thomas, 654 F.3d 1171, 1175-76 (11th Cir. 2011). Together, these criteria serve to balance the medical requirements of inmates against the corresponding burden placed on the penal system in such a way as to reserve constitutional censure for genuinely egregious abuses of the government's obligations. See Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981).

Medical malpractice claims, however, present a marked contrast. In these cases, the defendant's state of mind is irrelevant because an objective standard of care is applied. See Johnson v. Riverdale Anesthesia Assoc., 547 S.E.2d 347, 348 (Ga.

7

Ct. App. 2001) ("[T]he applicable standard of care [in medical malpractice actions] is that employed by the medical profession generally . . . ."). Moreover, the mistreatment of any medical need, no matter how slight, may give rise to a claim. See, e.g., Bowling v. Foster, 562 S.E.2d 776, 776-77 (Ga. Ct. App. 2002) (listing elements of medical malpractice claim in Georgia, which do not include a severity requirement). Not so with Eighth Amendment claims.

### 1. Serious Medical Need

The first element that must be proven by an inmate asserting an Eighth Amendment claim is an objectively serious medical need, "one that, if left unattended, pos[es] a substantial risk of serious harm." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotations omitted); accord Youmans v. Gagnon, 626 F.3d 557, 564 (11th Cir. 2010) ("[S]erious medical needs are those requiring immediate medical attention." (quotations omitted)). "[T]he essential test is one of medical necessity . . . ." Woodall, 648 F.2d at 272 (emphasis added). Serious medical needs include those "diagnosed by a physician as mandating treatment," or, alternatively, those that are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir.2003).

Whether a particular ailment is "serious" or not is by nature a fact intensive inquiry, one best answered by example. So, to illustrate, the following conditions constitute serious medical needs when assayed under the Eighth Amendment: swollen ankles, inability to sleep, chills, tingling and numbness of hands, hyperventilation, severe back and leg pain, and double vision, Ancata v. Prison Health Serv., Inc., 769 F.2d 700, 702-03 (11th Cir. 1985); severe and protracted stomach pain, spasms, nausea, vomiting, diarrhea, and dramatic weight loss, McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999); swollen and continually bleeding gums, intense pain, and weight loss from inability to eat, Farrow, 320 F.3d at 1243-44; HIV, hepatitis C, recurrent skin infections, severe eye pain and vision problems, fatigue, and prolonged stomach pains, Brown v. Johnson, 387 F.3d 1344, 1346, 1350 (11th Cir. 2004); prolonged amniotic fluid leak severe enough to cause stillbirth, Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

### 2. Deliberate Indifference

Even if an inmate can establish that he suffered from a serious medical need, he must further prove that the allegedly offending prison official acted with an attitude of "deliberate indifference" to that need in order to succeed on his claim. Estelle, 429 U.S. at 106. This means, as the Supreme Court later clarified in Farmer v. Brennan, 511 U.S. 825 (1994), that

the inmate must demonstrate that the official had subjective knowledge of a risk of serious harm and consciously disregarded that risk. Id. at 837 ("We hold . . . that a prison official cannot be liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ."). Inquiry into the prison official's state of mind is consistent with the plain import of the Eighth Amendment's prohibition on cruel and unusual "punishments" — not cruel and unusual "conditions." Farmer, 511 U.S. at 837; accord Wilson v. Seiter, 501 U.S. 294, 300 (1991) ("The source of the [subjective] intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*." (emphasis in original)). In other words, it is the subjective culpability of the actor which converts malprovision of care from an unfortunate *incident to* punishment into the *infliction of* punishment. See Farmer, 51 U.S. at 837-38. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Farrow, 320 F.3d at 1246 ("[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.").

10

A review of the case law shows that Eleventh Circuit jurisprudence has been faithful to the language and intent of Estelle, giving "substance to [the Supreme Court]'s distinction between 'deliberate indifference' and mere negligence." McElligott, 182 F.3d at 1255. A very limited number of categories of action, or inaction, have thus far been held to constitute deliberate indifference: care so grossly inadequate that it shocks the conscience, easier and less efficacious courses of treatment, cursory treatment of obvious medical needs, or unnecessary and unjustifiable delays in treatment. See Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995). Each of the listed categories identifies conduct rooted in a conscious and unjustifiable subordination of an inmate's medical requirements, the result of which is needless suffering and, consequently, a deprivation of Eighth Amendment rights.

**B. Analysis**

As indicated by the preceding, the Court's analysis has two components. First, Plaintiff's allegations must show that he had a serious medical need; if so, the Court will consider whether the allegations regarding Dr. Chaudhary's response to that need are sufficient to show deliberate indifference.

*1. Serious Medical Need*

Eleventh Circuit law holds, as the Magistrate Judge noted,

that infection with hepatitis constitutes an objectively serious medical need. See Brown, 387 F.3d at 1351. According to the Complaint, Plaintiff has suffered from chronic hepatitis B since at least 2000; therefore, the Court finds that Plaintiff's allegations establish that he suffered from a serious medical need.

### 2. Deliberate Indifference

Notwithstanding Plaintiff's medical need, the Court concludes that the factual allegations of the Complaint do not reasonably support an inference of deliberate indifference. To establish deliberate indifference, a prisoner must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goebert, 510 F.3d at 1326-27 (punctuation and citation omitted). Each of these elements will be addressed in turn.

#### a. Subjective Knowledge of the Risks

Although the Complaint does not expressly state as much, Plaintiff's allegation that Dr. Chaudhary declined to offer treatment nevertheless presupposes that Dr. Chaudhary was aware of his condition and its attendant risks. That is, Dr. Chaudhary's consultation with Plaintiff was prompted by, and predicated upon, precisely such awareness. Accordingly,

Plaintiff has sufficiently alleged that Dr. Chaudhary had the requisite knowledge to sustain a claim.

### b. Disregard of the Risks

Plaintiff claims that he should have been treated in September 2009 when Dr. Chaudhary concluded that treatment was unnecessary. If this claim is taken as true for present purposes, as is required, then it follows that Dr. Chaudhary's conclusion was in error; and if in error, it is reasonable to infer that the error was borne from a failure to properly take account of the risks associated with Plaintiff's condition. This second element has, therefore, been satisfied.

### c. By Conduct that is More than Gross Negligence

It is as to this last element that Plaintiff's claim fails. Even if Dr. Chaudhary was aware of Plaintiff's condition and its medical risks, and even if he failed to adequately consider those risks in denying Plaintiff treatment, it does not follow from these facts alone that his doing so amounted to something more than gross negligence. So, as presently alleged, Dr. Chaudhary's culpability hinges exclusively upon the additional fact that his denial of treatment was at odds with the earlier recommendation of Dr. Cheney. Yet this fact, which constitutes no more than a professional medical disagreement, cannot by itself sustain a claim.

Eleventh Circuit law is clear: when medical treatment decisions are responsive to an inmate's needs and rooted in professional, medical judgment - even if such decisions are misguided or ineffectual - a claim for deliberate indifference cannot be sustained. "[T]he propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action." Enriquez v. Kearney, 694 F. Supp. 2d 1282, 1296 n.13 (S.D. Fla. 2010); see also Estelle, 429 U.S. at 107 ("[T]he question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (noting that "a simple difference in medical opinion" does not constitute deliberate indifference). This limiting principle has been consistently applied. See, e.g., Nimmons v. Aviles, 409 Fed. Appx. 295, 297-98 (11th Cir. 2011) (claim could not be sustained against prison surgeon even though another doctor later expressed concern about surgeon's treatment); Smith v. Florida Dep't of Corrections, 375 Fed. Appx. 905, 910 (11th Cir. 2010) (inmate's disagreement with prison medical staff concerning the course of treatment did not support deliberate indifference); Bismark v. Fisher, 213 Fed. Appx. 892, 897 (11th Cir. 2007) (doctor's failure to adopt plan of care prescribed by outside physician after exercising independent professional judgment did not support deliberate indifference); Adams, 61 F.3d at 1546 (doctor's failure to administer a stronger course

14

of treatment considered a matter of medical judgment not deliberate indifference).

To sustain his charge of deliberate indifference, then, Plaintiff must allege facts beyond those showing a professional disagreement. He has not done so. Plaintiff claims that he was "maliciously" denied treatment (doc. no. 1-1 ¶ 3), but the Court need not take account of such conclusory pronouncements. See Iqbal, 129 S.Ct. at 1949-50 (holding that respondent's allegations that petitioners "knew of, condoned, and willfully and maliciously [denied him of his constitutional rights]" were not entitled to an assumption of truth). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 1949 (citation and punctuation omitted). This legal conclusion aside, Plaintiff's Complaint is devoid of factual content from which one might reasonably infer that Dr. Chaudhary's recommendation to withhold treatment was based on something other than his professional medical judgment – even if incompetently exercised. Additional circumstantial facts which would support an inference of culpability include a defendant's (1) lack of professional medical training, see Woodall, 648 F.2d at 271-72 (Sheriff refused to provide inmate with specialized psychotherapy as recommended by prison psychiatrist), (2) history of misconduct, see Mandel v. Doe, 888 F.2d 783, 790 (11th Cir. 1989) (evidence that a medical official had in the

15

past inflicted unnecessary pain on a patient in his care supported finding of deliberate indifference), or (3) failure to treat an obvious and immediate medical need, see Bozeman v. Orum, 422 F.3d 1265, 1273 (11th Cir. 2005) (fourteen minute delay in treating an inmate who was unconscious and not breathing supported deliberate indifference). Here, the only allegation which might qualify as such is Plaintiff's claim that he was in constant pain at the time treatment was denied. (Compl. ¶ 19). Plaintiff has not, however, indicated the duration or severity of that pain; absent more than this nonspecific affliction, the need for immediate treatment was not so obvious at the time as to undergird an inference that Dr. Chaudhary's recommendation is constitutionally suspect. Cf. Goebert, 510 F.3d at 1327 (nine day amniotic fluid leak constituted obvious risk requiring immediate treatment).

The United States Constitution does not entitle inmates to medical care tailored to their preferences. See Abel v. Lappin, 661 F. Supp. 2d 1361, 1373 (S.D. Ga. 2009) ("It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate."). Indeed, the Eighth Amendment does not even dictate that inmates receive professionally competent care, a point the extended exposition above was intended to underscore. See Estelle, 429 U.S. at 106. With these principles in mind, Plaintiff's

grievance falls flat. The facts as alleged by Plaintiff show that his condition was attended to by prison medical staff for nearly a decade. Since his incarceration in 2000, Plaintiff's ailment was monitored to ensure that treatment would be available if necessary. He was transferred on multiple occasions to a specialized medical facility for no other purpose than to consult with physicians regarding his condition. He underwent rather sophisticated testing, including blood work and a liver biopsy, to assess the necessity of treatment.

Yet, from this long history of medical attention, Plaintiff has isolated Dr. Chaudhary's recommendation against treatment and juxtaposed it against a single decision that he deems more favorable, and relies on the contrast to state his claim. But the long and short of the claim's factual underpinning is this: after Plaintiff's condition had been monitored for nearly a decade, one doctor recommended treatment on the basis of a blood test, and subsequently, another doctor rejected that recommendation on the basis of a biopsy. Undoubtedly, one of these decisions was more medically appropriate, but the Court has neither the charge nor competence to arbitrate between the two as the case now stands before it. One thing, however, is certain -- conscious disregard may not be inferred from the latter recommendation solely by virtue of this antinomy. See Waldrop, 871 F.2d at 1033. All reasonable inferences must be drawn in Plaintiff's favor, but inferences drawn in his favor

are not necessarily reasonable. Accordingly, the Court finds that Plaintiff has failed to show that Dr. Chaudhary acted with deliberate indifference.

## IV. CONCLUSION

Upon the foregoing, the Court **SUSTAINS** Dr. Chaudhary's objection to the Magistrate Judge's Report and Recommendation. (Doc. no. 56.) Accordingly, Dr. Chaudhary's motion to dismiss is **GRANTED IN FULL**, and Plaintiff's Eighth Amendment claim against him is **DISMISSED**. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against Dr. Chaudhary, and those claims are therefore **DISMISSED WITHOUT PREJUDICE**. Only Plaintiff's claims against Dr. Moore now remain before this Court.

Separately, because it addresses matters dealt with herein and discovery in this case has not yet begun, Plaintiff's motion for summary judgment (doc. no. 59) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may re-file the motion at a later date, taking into account the Court's present Order. Finally, Plaintiff's motion for preliminary injunction (doc. no. 59) is **DENIED** as it merely restates the allegations of the Complaint and fails to demonstrate a substantial likelihood of success on the merits. See Church v. Huntsville, 30 F.3d 1332, 1347 (11th Cir. 1994) (holding that preliminary injunction may not be

granted absent movant's demonstration of a substantial likelihood of success on the merits).

With these matters resolved, the Clerk is **DIRECTED** to issue a scheduling notice to the parties.

**ORDER ENTERED** at Augusta, Georgia, this 25th day of January, 2012.

_____
UNITED STATES DISTRICT JUDGE